BANCO COMERCIAL DE PUERTO RICO, Plaintiff and Appellee, *v.* DR. FELIPE GARCÍA ET AL., Defendants and Appellants.

No. 7238. Argued May 19, 1937.—Decided June 15, 1937.

*E. Pérez Casalduc* for appellants. *Herminio Miranda* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

This is an action of debt in which it was alleged that on February 28, 1930, the defendant Felipe A. García, in his own behalf and as attorney in fact of Monserrate F. de García,

made a promissory note for $1,216 in favor of Banco Comercial de Puerto Rico now in liquidation, Banco de Puerto Rico being in charge of said liquidation. The note was to become due on May 30, it being agreed that the plaintiff would receive interest at the rate of 12 per cent per annum in case of default, plus the costs, expenses, and attorney's fees, which were fixed by agreement of the parties at $250. It was further alleged that the defendants are all of age and the heirs of Monserrate F. de García who died in 1930, Dr. Felipe García residing in Hatillo, José García and Juan García in San Juan, Ramón G. García in San Juan, and her grandchildren Minerva Rafaela, Roberto, and Manuel Figueroa García in Villalba.

The defendants failed to answer. The plaintiff requested that their default be noted and that judgment be entered granting the prayer of the complaint. This was done by the clerk three days after the entry of the default.

The defendants appealed from the above judgment and assigned as a first error that the complaint fails to state facts sufficient to constitute a cause of action because it is not alleged therein that the defendants, who are sued in their capacity as heirs of Monserrate F. de García, have accepted the inheritance; and because it does not appear from the complaint that Monserrate F. de García was alive at the time when, as alleged, Felipe A. García, acting as her attorney in fact, had signed the promissory note sought to be collected.

In *Amy* v. *Aponte et al.*, 29 P.R.R. 134, 138, this court held that the refusal to accept an inheritance is an exception favoring the heirs. It was urged in that case that the facts as set out in the complaint failed to constitute a cause of action because it did not appear from the pleadings that the defendants had accepted the inheritance with or without benefit of inventory or that their predecessor in interest had left property subject to acceptance either express

or implied. In passing upon the question raised this court expressed itself as follows:

"The plaintiff must allege only that the defendants are the heirs, for, according to Robles Pozo in his commentaries on the Civil Code, 'at the moment of the death of the ancestor he is substituted by his heirs or successors and an acceptance is not necessary, for this is presumed to be a consequence of the succession, the repudiation by the heirs amounting to a renunciation of a right which they already have and possess and to an abandonment and rejection of a capacity already acquired; or the heirs may expressly accept it conditionally according to the rights conferred by law.'

"Refusal to accept the inheritance is an exception favoring the heirs in order to exempt them from the fulfilment of the obligations in which they succeed their ancestor by reason of his death, and as an exception it is a defense for the defendants to plead. *Dapena v. Estate of Dominicci,* 12 P.R.R. 64.

"On March 2, 1896, the Supreme Court of Spain (79 *Jurisprudencia Civil* 414), in an appeal from a money judgment against certain minors represented by their mother wherein error was alleged in the violation of sections 922 and 1005 of the Spanish Civil Code, held that the sections cited were applicable to the case because the appellants, who had been adjudged to pay a debt incurred by their father, were his forced heirs and it had not been suggested or attempted to prove that they had renounced the inheritance, nor even that they had accepted it conditionally.

"This case is similar to the one cited and must be governed by the rule laid down."

The attorney for the defendants, in an extensive and elaborate brief, claims that this court was mistaken in its viewpoint and in support of his contention cites Manresa, Sánchez Román, and a decision from the Supreme Court of Louisiana. Manresa holds, in opposition to Robles Pozo, that if the contention of said text writer is correct, if the transfer of rights and obligations from the decedent to the heirs takes place at the ancestor's death, without the necessity of an acceptance, a creditor of the ancestor may enforce his claim against the heirs upon the ancestor's death, it being incumbent upon the heirs, in order to oppose the claim,

to plead the demurrer of lack of personality, having first shown the repudiation. He further states that such viewpoint is opposed to the provisions of section 1005 of the Civil Code, according to which if the heir fails to accept the inheritance the creditor must move the court to fix a term for the heir to accept or repudiate the inheritance, and the reason why the creditor is authorized to proceed against the heir at the expiration of such term is to be found in the tacit acceptance implied by the terms of the warning which, under. such section, must be given to the ·heir. In the opinion of Manresa such warning shows that the acceptance is required so that the transfer of the rights and obligations of the estate should take place.

We do not think that Manresa's arguments can be relied upon for a modification of the viewpoint maintained by this court. The learned commentator asserts that the Italian Code, which has had so much influence on code making in modern times, sustains in section 925 the principle that the possession of hereditary property passes to the heirs *ipso jure* upon the death of their predecessor in interest. Such principle was already established in section 724 of the French Code in favor of legitimate heirs, to the exclusion of natural children as well as of the surviving spouse and of the State. Similar doctrines were followed by the Dutch Code in section 880 thereof and others; and even in section 554 of the 1851 project, leaning in that direction, it was provided that heirs succeeded to the estate of the decedent, by the mere fact of his death, not only as regards the ownership but also the possession thereof. 5 Manresa 319, 5th ed.

The commentator further says in support of this viewpoint that it has been advanced that this interpretation is the one most in accord with the principles already accepted by the jurisprudence, and he adds that, contrary to the contention of the above text writers, the code requires that the acceptance must precede the transfer of the hereditary prop-

erty, although the legal effects of the acceptance of the inheritance retroact to the moment of the death of the predecessor in interest.

The strongest argument advanced by Manresa in support of his theory is the provision contained in section 1005 of the Spanish Civil Code, equivalent to section 959 of our Civil Code, 1930 ed. According to this section, should a third person in interest bring suit to compel the heir to accept or repudiate the inheritance, the judge shall fix a period, not exceeding thirty days, within which the heir shall declare his intention, warning him that should he not do so, the inheritance shall be deemed accepted. And we add, what else can be required than an action established against the heirs claiming from them the payment of an obligation contracted by their predecessor in interest? The law grants ten days to the defendants to set up their allegations, and there is nothing to prevent them from petitioning the court for reasonable term within which to accept or repudiate the inheritance. Monserrate F. de García died in 1930, and this complaint appears to have been filed on February 21, 1931.

Section 959 provides that once the suit has been brought, the term to be granted for making a declaration shall not exceed thirty days. As may be seen, a peremptory term is involved, and it is no hardship on the defendants to make such declaration where they are required to perform an obligation contracted by their predecessor in interest. The acceptance of the inheritance may be either express or implied, and if the heir should have performed any act implying such acceptance, such act must necessarily be within his knowledge, and the third person in interest should not be expected to allege and prove acts of which perhaps he has no knowledge or which he is not bound to know. Every material allegation must be proved in order to establish a cause of action, and if the plaintiff does not know that the inheritance has been accepted, he can not be required to allege facts

which he will be unable to prove for want of the necessary information. To hold otherwise would be to authorize the heir to evade easily, by remaining silent, the performance of an obligation of his predecessor in interest, since he can protect and exempt himself from every responsibility by establishing the fact that he had not accepted or that he had repudiated the inheritance.

As aptly said by Manresa, where the inheritance is accepted the legal effects of the acceptance retroact to the moment of the death of the predecessor in interest. If the person who judicially claims from the heir the fulfilment of an obligation contracted by his predecessor in interest is compelled to prove the acceptance of the inheritance, he might easily fail in his endeavor for want of the necessary information. If subsequently the acceptance of the inheritance by such heir is proven, the creditor might perhaps find himself in a difficult situation in order to enforce his rights, since he had failed in his purpose, for want of evidence, in a previous action against the heir in question. It is true that under section 959 a third person in interest may demand that the heir either accept or repudiate the inheritance, but if by the filing of the complaint this end is attained, it seems unnecessary to compel him to comply with such requisite as a condition precedent to establish his claim. A mere question of procedure is involved which, in our opinion, does not destroy the principles enunciated by the commentator Manresa. If the heir accepts the inheritance he becomes answerable for the obligation contracted by his predecessor in interest. If he repudiates it, no liability attaches to him. It seems advisable to state that the provision of section 959 is applicable where the heir is to accept or repudiate the inheritance. It might happen that he has accepted it without the knowledge of the third person in interest, in which case he would be requested to do a thing that he has already done. This might happen, because the third person in interest is

not bound to know of the fact of the acceptance of the inheritance whether express or implied which, as we have already stated, is rather within the knowledge of the heir. The error assigned must be overruled.

■ In the second assignment of error it is urged that the clerk of the court lacked authority to enter the judgment appealed from. The ground of this supposed error is that the obligation of the defendants to pay the debt alleged in the complaint derives from the fact of their being the sole heirs of the person who subscribed the note and not from that of their having contracted with the plaintiff. The heir, as is known, is the continuation of the personality of his predecessor in interest. The complaint alleges a contract entered into with the defendant Felipe A. García and with Monserrate F. de García through her attorney in fact. Mrs. García having died, her heirs are answerable for the obligation contracted. There was no error.

■ It is finally urged that the lower court did not acquire jurisdiction over the persons of the defendants. It is said in support of this assignment that in the return of the summons it was not stated under oath that the person who made the service of process was above eighteen years of age. The certificate of the return reads as follows:

"I, José Otero, over 21 years of age, state under oath: That I am not a party · to nor have any interest in the present case, and that I received the present summons on April 26, 1935, and personally served the same on Felipe García at 9 : 45 on April 27, 1935, at his home in Hatillo, P. R.; on Manuel Figueroa García at 1 : 30 p. m. on April 27 at his home in Villalba, P. R.; on Ramón G. García at 6 p. m. on April 27, 1935, at his home in Juncos, P. R.; on José García at 5 : 30 p. m. on April 29, 1935, in Víctor Figueroa Street, Santurce, San Juan, P. R., and on Juan García, Roberto Figueroa García, and Minerva Rafaela Figueroa García at 6 p. m. on April 29, 1935, at No. 4 Dos Hermanos Street, Santurce, San Juan, P. R., by delivering to each of the aforesaid persons a true and faithful copy of the complaint and of the summons in the present case, and I have set down under my signature at the back of the sum-

mons the place and date of its delivery and service. San Juan, Puerto Rico, April 30, 1935. (Signed) José Otero, Affiant.

"Affidavit No. 2164. Sworn to and subscribed before me by José Otero, over 21 years of age, married, an employee residing in San Juan, Puerto Rico, whom I personally know. (Signed) Rafael Ramírez Santibáñez, Notary."

In *Buonomo* v. *Succession of Juncos,* 28 P.R.R. 380, a return of summons similar to the one under consideration as regards the age was made. It was therein held by this court that the error assigned was so patent and the jurisprudence on the matter was so positive that it was compelled to declare that the court did not acquire jurisdiction over the persons of the defendants in the said suit.

In *López et al.* v. *Quiñones,* 30 P.R.R. 317, 322–323, this court said:

"This summons having been served by a person other than the marshal, inasmuch as the deputy marshal who acted did not sign the returns in the marshal's name, in order that the court could acquire jurisdiction of the persons of the defendants and dispose of the action on their default it was necessary, in accordance with section 92 of the Code of Civil Procedure, that the returns should show that the process server was not a party to the action and was more than eighteen years of age. *Andino* v. *Knight,* 20 P.R.R. 185; *Serrano* v. *Berdiel et al.,* 22 P. R. R. 416; *Torres & Enseñat* v. *Alfaro,* 24 P. R. R. 683; *Delgado* v. *Registrar of Humacao,* 25 P. R. R. 450; *Quintana et al.* v. *Aponte,* 26 P. R. R. 169; *Buonomo* v. *Succession of Juncos,* 28 P. R. R. 380. These requirements were not complied with in the returns, for although in the second one the words 'over eighteen years of age' were written outside of the body of the affidavit and following the signature of Pedro M. Pabón, after which a notary certified that the return was subscribed and sworn to before him, the statement with regard to age can not be considered as having been sworn to, for only what is stated in the body of the affidavit and above the signature is what can be considered as the process server's affidavit. What is written below the signature in a signed document can not be considered as a part of it, unless it is so shown in some manner. Moreover, in this case no evidence was produced to show that the process server was more than eighteen years of age when he served the summons; therefore, we must con-

clude, as did the court below, that the services of the summons on the defendants in the first action were null and void; that the court did not acquire jurisdiction of them, and that, as a consequence, all of the subsequent proceedings are also null and void, . . ."

Such is the doctrine laid down by this court which we feel bound to follow for the reasons stated, especially in the instant case in which there is involved a judgment by default entered by the clerk of the lower court. In the certificate of the return it is not stated under oath that José Otero was over 18 years of age. It is to be regretted that such an error has been committed and that because of an omission of this character we should be compelled to set aside a judgment which in every other particular complies with the requisites prescribed by law.

The judgment appealed from must be reversed.